1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  BLAKE LOEBS, State Bar # 145790
   KIMBERLY A. BLISS, State Bar #207857
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-3861
   Facsimile:     (415) 554-3837
7
   Attorneys for Defendants
8  CITY AND COUNTY OF SAN FRANCISCO,
   VICTOR WYRSCH and JOANNE HAYES-WHITE
9

10 MICHAEL DENNIS MEADOWS, ESQ.
   ANDREW CHARLES SCHWARTZ, ESQ.
11 Casper Meadows Schwartz & Cook
   California Plaza
12 2121 North California Boulevard
   Suite 1020
13 Walnut Creek, CA 94596
   Telephone:     (925) 947-1147
14 Facsimile:     (925) 947-1131

15 Attorneys for Plaintiffs
   ESTATE OF NICHOLAS TORRICO,
16 BONNIE JEAN TORRICO and CARLOS TORRICO

17                   UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NICHOLAS TORRICO *deceased*, BONNIE JEAN TORRICO *individually and as successor in interest to the Estate Of Nicholas Torrico* and CARLOS TORRICO, *individually and as successor in interest to the* ESTATE OF NICHOLAS TORRICO,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, VICTOR WYRSCH and JOANNE HAYES-WHITE i*n her official capacity as Chief of the San Francisco Fire Department*, and DOES 1 through 20,<br><br>　　　　　Defendants. | Case No. 07-CV-03624-JCS<br><br>**JOINT CASE MANAGEMENT CONFERENCE**<br><br>Hearing Date:　　November 16, 2007<br>Time:　　　　　　1:30 p.m.<br>Before:　　　　　Judge Spero<br><br>Trial Date:　　　None set |

Joint Case Management Conference                 1                 n:\lit\li2007\070567\00448801.doc
Case No. 07-CV-03624-JCS

Pursuant to this Court's Order Setting Case Management Conference for November 16, 2007 at 1:30 p.m., the parties submit the following Joint Case Management Statement.

**1.    Jurisdiction and Service:  The basis for the Court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.**

This Court's jurisdiction is based on Section 1983 and diversity.  No issues exist as to venue, jurisdiction or service.

**2.    Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.**

Plaintiffs' Version:

The decedent in this case, Nicholas Torrico, a resident of Seattle, Washington, was observed standing near a ledge on the roof of a 5 story building on Powell Street.  Concerned that the decedent was considering jumping, police and fire department units responded to the scene.  Police officers were communicating with the decedent to determine his intentions and to persuade him to come down when Defendant Lieutenant Victor Wyrsch of the San Francisco Fire Department, acting on his own, approached the decedent from behind and attempted to physically remove him from the roof.  However, his momentum pushed the decedent over the ledge, causing him to fall to his death.

Defendants' Version:

On October 12, 2006, Captain Victor Wyrsch, of the San Francisco Fire Department, risked his own life to save the life of Nick Torrico, someone he had never met before, by attempting to pull him to safety before he plunged four stories to his death.  Had he succeed, Captain Wysch no doubt would have been honored by Mr. Torrico's family.  But, because Mr. Torrico struggled and slipped from Captain Wyrsch's grasp, Captain Wysch has instead been named a defendant in this meritless civil rights lawsuit.

On October 12, 2006, the San Francisco Fire Department received a call that a man was on the edge of a roof a building in Nob Hill and may be about to jump or fall to his death.  Many members of the San Francisco Fire Department responded to the call.  Included in the response team was then

Lieutenant (now Captain) Victor Wyrsch, who was the Lieutenant in charge of Rescue One. Rescue One is one of two San Francisco Fire Department teams that specialize in rescues and in particular, high-angle rescues, such as rescues from buildings, bridges and cliffs. Captain Wyrsch has been a firefighter for 19 years and, at the time of the incident, had been on the Rescue Team for 10 years. Before this incident, he had personally saved several other individuals from certain death who had positioned themselves in precarious and life-threatening situations by grabbing them just before they fell or could leap to their death. On this day, he was working as the Lieutenant in charge of Truck Company One.

When Captain Wyrsch arrived at the scene with Truck Company One, he initially believed that he would be there merely to assist other firefighters. From the street four stories below, Captain Wyrsch noticed individuals on the street expressing great concern and pointing to the top of a building. Captain Wyrsch immediately directed the fire truck to place a ladder against the fire escape to that building. Captain Wyrsch climbed the fire escape to the roof. When he reached the top, instead of finding several other first responders on the roof as he had expected, he found that he was alone on the roof with an unidentified individual, now known to be Nick Torrico. Mr. Torrico was at the very edge of the roof on top of terracotta roof tiles that were slanted at 45 degree angles, dangling four floors above the street.

The other rescue personnel were on a different roof top, looking down at Captain Wyrsch and Mr. Torrico. Captain Wyrcsh quickly assessed the situation and Mr. Torrico's precarious position and decided that he was the only person in a position to attempt to rescue Mr. Torrico before he could jump or fall to his death.

In Captain Wyrsch's judgment, Mr. Torrico's position on the roof, whether intentional or by accident, was so dangerous that if Captain Wyrsch hesitated, he would merely be a witness to Mr. Torrico falling to his death. Captain Wyrsch also determined that the situation was so precarious that he could not even wait until he could be tethered to something to ensure his safety before attempting the rescue. To avoid startling Mr. Torrico with radio traffic, Captain Wyrsch turned his radio off as he quietly approached Mr. Torrico from behind. Just as Captain Wyrsch got to Mr. Torrico, he grabbed Mr. Torrico in an attempt to pull him back onto the roof top. For reasons that may never be

1 known, Mr. Torrico struggled violently against Captain Wyrsch, almost causing both of them to
2 tumble off the side of the building. Eventually, as he continued to struggle against Captain Wyrsch,
3 Mr. Torrico broke free of Captain Wyrsch's grasp and fell.

4     Mr. Torrico died from injuries caused by the fall shortly after.

5     Following this incident, it has become apparent that Mr. Torrico was a very troubled
6 individual who suffered from severe depression, alcohol and drug abuse.

7     Mr. Torrico's mother and father have now brought this lawsuit against Captain Wyrsch for
8 risking his life to save their son's.

9     **Factual Issues in Dispute:**

10     <u>Plaintiffs</u>:

11     The principal factual issues in dispute concern the intentions of the decedent while on the
12 roof, and the necessity of physical intervention on the part of the police or fire department personnel,
13 under the circumstances presented.

14     <u>Defendants</u>:

15     Defendants are not aware of any facts in dispute at this time that would effect summary
16 judgment.

17     **3.**     <u>**Legal Issues**</u>**: A brief statement, without extended legal argument, of the disputed**
18 **points of law, including reference to specific statutes and decisions.**

19     <u>Plaintiffs</u>:

20     Principal disputed legal issues pertain to whether the actions of Defendant Captain Wyrsch
21 constituted an illegal seizure, and the application of qualified immunity to the circumstances of this
22 case.

23     <u>Defendants</u>:

24     (1) Whether Plaintiffs have any legal basis to bring this action under the Fourth or Fourteenth
25 Amendments pursuant to 42 U.S.C. § 1983;

26     (2) Whether Captain Wyrsch is entitled to qualified immunity under federal law; and

27

28

(3) Whether Captain Wyrsch is immune from Plaintiffs' state law claims pursuant to Cal. Health & Safety Code §1799.107, which provides qualified immunity to emergency rescue personnel unless they performed their duties "in bad faith or in a grossly negligent manner"

**4.    Motions: All prior and pending motions, their current status, and any anticipated motions.**

Plaintiffs:

No motions are currently pending.  Motions for summary judgment or summary adjudication are anticipated.

Defendants:

Defendants anticipate bringing a motion for summary judgment, or other dispositive motion as soon as possible.

**5.    Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.**

Plaintiffs:

None Anticipated.

Defendants:

Defendants do not anticipate filing any amended pleadings at this time.

**6.    Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.**

The parties have requested that all relevant evidence of which they are aware that is in their custody and control be preserved.

**7.    Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.**

Plaintiffs:

Plaintiffs have served their initial disclosures.

Defendants:

Defendants anticipate completing and issuing their initial disclosures on November 9, 2007.

**8.   Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).**

The parties anticipate taking a total of no more than 20 depositions, 35 interrogatories per side, document demands, requests for admissions (perhaps), and expert discovery.

**9.   Class Actions: If a class action, a proposal for how and when the class will be certified.**

N/A

**10.   Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.**

N/A

**11.   Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.**

Plaintiffs:

All recoverable damages, including attorney fees and costs, for the unlawful seizure and wrongful death of Nicholas Torrico, including damages for medical costs, funeral expenses, loss of future support, loss of love, comfort, society, moral support, and moral guidance.

Defendants:

Dismissal of all claims plus costs.

**12.   Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.**

The parties have selected mediation as their ADR option and hereby request additional time in which to complete discovery before attending the mediation. The parties have spoken with the mediator, Eric Ivory, who has been assigned to the case, and all have agreed, pending Court approval, to conduct the mediation on April 10, 2008.

**13.   Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.**

The parties have already consented to a Magistrate Judge for all purposes.

**14.   Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.**

The parties do not believe that Other References are appropriate for this matter.

**15.   Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.**

Plaintiffs:

Defendants:

Defendants believe that this entire matter can be disposed of by motions and that discovery be streamlined to allow the Court to consider those motions as early as possible, without the parties spending time on discovery unnecessary to those motions.   Defendants also request that Plaintiffs' *Monell* claims be bifurcated for purposes of discovery and trial.

**16.   Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.**

The parties do not believe that this case would be appropriate to be handled on an expedited basis.

**17.   Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.**

Fact discovery cut-off:   May 2, 2008

Expert Designation:   June 6, 2008

Rebuttal Expert designation:   July 11, 2008

Expert discovery cut-off:   August 8, 2008

Last day for filing Dispositive Motions:   September 5, 2008

Trial:   February 2, 2009

**18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.**

Jury trial has been requested. The parties currently anticipate that this case will take three weeks to complete, with five full court days per week.

**19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.**

Neither party knows of any entity or person who would be substantially affected by the outcome of these proceedings other than the parties to this matter.

**20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.**

None at this time.

Dated:  November 9, 2007                    DENNIS J. HERRERA
                                            City Attorney
                                            JOANNE HOEPER
                                            Chief Trial Attorney
                                            BLAKE P. LOEBS
                                            KIMBERLY A. BLISS
                                            Deputy City Attorney


                                            By:  s/Blake P. Loebs
                                                BLAKE P. LOEBS
                                                Attorneys for Defendants

Dated:  November 9, 2007                    CASPER, MEADOWS, SCHWARTZ & COOK


                                            By:  s/Michael D. Meadows
                                                MICHAEL D. MEADOWS
                                                Attorneys for Plaintiffs